318 So.2d 414 (1975)
FLORIDA OUTDOOR, INC. and Riso, Inc., Appellants,
v.
Jimmie STEWART and Orien Stewart, Appellees.
No. 74-613.
District Court of Appeal of Florida, Second District.
July 30, 1975.
Rehearing Denied August 29, 1975.
John P. Harllee, III, of Harrison, Harllee & Porges, Bradenton, for appellant Florida Outdoor, Inc., and David G. Bowman of Burket, Smith & Bowman, Sarasota, for appellant Riso, Inc.
Russell S. Koss of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellees.
McNULTY, Chief Judge.
Appellants, Florida Outdoor, Inc. and Riso, Inc., appeal from a non-jury verdict and judgment against them for destruction of appellees' advertising billboard and consequent loss of future rental profits.
The operative facts are simply stated. Appellees, husband and wife, owned an advertising billboard. Under an informal agreement with appellant Florida Outdoor, Inc., appellees paid $35.00 per month for sign maintenance and advertiser acquisitions. Florida Outdoor, Inc. had secured Arvida Corporation as an advertiser at the rate of $200.00 per month.
Shortly before the events giving rise to this action Arvida Corporation had complained *415 to Florida Outdoor, Inc. about the dilapidated condition of the sign. Florida Outdoor, Inc.'s agent then contacted appellees who suspected that the sign was a non-conforming use under a city ordinance and could not be replaced lawfully once torn down. According to appellees' testimony, they then contacted the city zoning supervisor who told them it was permissible to repair the sign by replacing the structural supports and facing. Armed with this information appellees contacted Florida Outdoor, Inc. about such repairs and asked them to reconfirm the legality thereof. Without reconfirming the legality, however, Florida Outdoor, Inc. subcontracted with appellant Riso, Inc. to do the repairs. But on or about January 1, 1970 Riso, Inc. tore down the billboard, rather than repair it, saying at trial that appellees had purchased an entirely new sign from FloridaOutdoor, Inc. which they wanted Riso, Inc. to erect. Appellees disputed this. In any event, the old sign was removed, as we've said, and after removal, the City of Sarasota prohibited replacement because it would in fact constitute a non-conforming use under an applicable municipal ordinance. Appellees then brought this action predicated on both negligence and breach of express and implied warranty. The trial court, properly we think, expressly rejected the implied warranty theory; and since there is no evidence to support an express warranty count we must assume that the judgment entered in favor of appellees was predicated on the negligence count. We reverse.
To begin with, if, as is apparently conceded, appellees were maintaining an illegal sign, we have serious doubts as to their standing to sue for its non-malicious removal.[1] The point is not argued, however, nor did the trial court rule on it. In any case, even assuming liability on whatever theory, we think the court fatally erred in awarding damages for loss of future rent.
It is rudimentary, of course, that damages cannot be based upon speculation, guesswork or conjecture. They must have some reasonable basis in fact and concerning damages for anticipated loss of profits in a commercial enterprise, the general rule is that such damages are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. The law recognizes an exception, nevertheless, when such loss of profits is shown to a reasonable certainty by competent proof.[2]
Here, the court awarded five years future profits obviously on the assumption that the rental of appellees' sign would have continued. But there is no evidence to support such assumption. To begin with, it is clear that the sign was in a dilapidated condition; and no proof was offered as to its life expectancy either in its existing dilapidated condition or if properly repaired.
Secondly, the questionable longevity of the sign is underscored by the undisputed fact that its very existence was unlawful under the aforementioned city ordinance concerning non-conforming signs and it could have been razed immediately or at any time.[3] We interpose, on this point, that the city zoning supervisor (who was appellees' witness, by the way) admitted that it was not presently practical to enforce the ordinance due to lack of manpower; but he said that if he had such *416 manpower, which he hoped would be forthcoming, the sign would be ordered down immediately.
Finally, there was no evidence concerning a future demand for using appellees' sign for advertising. To the contrary, the evidence suggests that Arvida Corporation, the current advertiser, soon would have ceased renting the original sign because of its run-down condition; the sign was in jeopardy of razing if repaired; and a replacement sign was legally impossible. Withal, since the future of any sign was questionable at best, the prospect for future advertisers was, in turn, even dimmer indeed.
In view of the foregoing, we are firmly of the view that the law cannot countenance an award of damages for loss of future profits based on the evidence herein. Accordingly, the judgment is reversed and the cause is remanded with directions that judgment be entered against appellants and in favor of appellees for nominal damages in a sum not to exceed $1.00.
GRIMES, J., and SCHWARTZ, ALAN R., Associate Judge, concur.
NOTES
[1] There was no claim made for the value of the sign.
[2] See, e.g., New Amsterdam Casualty Co. v. Utility Battery Mfg. Co. (Fla. 1935), 122 Fla. 718, 166 So. 856; Kenco Chemical & Manufacturing Co., Inc. v. Railey (Fla.App.1st, 1973) 286 So.2d 272.
[3] Section 40-7(1), of the Zoning Code of Sarasota, in force at the time, provides:

"Non-conforming signs: Any lawful sign existing on October 1, 1962 may be continued although it does not conform to this section. Such continuation may be for the useful life of such sign, but in no event shall such a non-conforming sign continue beyond five years from October 1, 1962."