372 So.2d 954 (1979)
BEVERAGE CANNERS, INC., Appellant,
v.
COTT CORPORATION, Appellee.
Nos. 78-615, 78-653.
District Court of Appeal of Florida, Third District.
June 19, 1979.
Rehearing Denied July 26, 1979.
*955 Heller & Kaplan and Daniel Neal Heller, Miami, for appellant.
Podhurst, Orseck & Parks and Joel D. Eaton, Miami, for appellee.
Before HENDRY and KEHOE, JJ., and SCHULZ, GEORGE E. (Ret.), Associate Judge.
PER CURIAM.
The major issue raised by this appeal is whether the trial court, as the trier of both law and fact, properly awarded nominal damages to appellant/plaintiff subsequent to rendering a decision against the appellee/defendant on the issue of liability in a breach of contract action.
The pertinent allegations of the complaint reflect that the appellant, Beverage Canners, Inc.,[1] sought damages for the breach of a franchise agreement entered into during November 1971 with the appellee, Cott Corporation, whereby it was agreed that appellant was to have the exclusive right, license and authority to produce, distribute and sell certain Cott trademarked carbonated beverages throughout the State of Florida; that the appellee unilaterally breached the agreement, refused to honor its commitment; that appellee failed to provide and perform all the acts and deeds it had agreed to perform; that appellant was ready, willing and able to perform; that as a direct and proximate result of the breach, appellant suffered damages, to-wit: loss of profits.[2]
As gleaned from the record and briefs in this cause, the trial court awarded nominal damages on the basis that the proof of loss of profits was too speculative and conjectural[3] and it, therefore, determined that the legal predicate had not been made for the establishment of an award of substantial damages. We must agree.
Beverage Canners, Inc. presented a plethora of testimonial and documentary evidence to the court in its attempt to establish the applicability of certain methods to compute the alleged loss of profits. These methods included: (1) computing an estimated figure by applying appellant's overhead costs and expenses (which were vastly different from those of the other producer)[4] to the total sales of the franchisee/other producer during the period of the subject franchise agreement; (2) computing an estimate by using the same rationale as in (1) above for a period prior to the franchise agreement (the other producer had been manufacturing the Cott products prior to the time covered by the subject agreement); (3) testimony of an expert witness in the soft drink industry with respect to the profit appellant might have earned from the volume of sales standpoint, the marketing profit that appellant might have gained, and the estimate of profit appellant might have earned  based upon the projected increase in sales, according to industry surveys.[5] *956 The estimated loss of profits, according to the various methods used by appellant, ranged from hundreds of thousands to over 3.5 million dollars.
Our courts cannot acquiesce under such circumstances to award lost profits awards where the amount of the alleged damages is not clearly shown to any reasonable degree of certainty. See, Belcher v. Import Cars, Ltd., 246 So.2d 584 (Fla. 3d DCA 1971), cert. denied, 252 So.2d 801 (Fla. 1971); Florida Outdoor, Inc. v. Stewart, 318 So.2d 414 (Fla. 2d DCA 1975), cert. denied, 333 So.2d 465 (Fla. 1976).
In attempting to prove its damages, appellant was unable to accurately ascertain an estimate due to the inherently speculative nature of such an endeavor; it cannot justify utilizing figures in its calculations which encompass too many variables and unforeseeable expenditures. For example, since appellant had had no prior experience with production of Cott beverages, the question is raised as to whether appellant's overhead costs would have remained the same with the advent of the sizable expansion of its business.[6] Additionally, there is no accurate equation stated by which the other producer's sales could be converted into meaningful data for application to appellant's accounting data, for appellant conceded that it had no knowledge of the other producer's accounting policies or the factors used to calculate its net sales (one of the "yardsticks" upon which appellant had based its loss of profit estimate). The record reveals that the expert witness testimony was patently conjectural, remote and contingent on changing conditions and circumstances, and, thus, could not warrant serious consideration as proof of damages here.[7]
We also note that the franchise agreement contained a number of contingencies which could plausibly have caused termination of the agreement; certain of the contingencies could have made the future of the franchise doubtful. Under such circumstances where contingencies could affect the duration of the business, lost profits estimates have been found too speculative to support a substantial recovery. Florida Outdoor, Inc. v. Stewart, supra.
Nominal damages may be awarded when the breach of an agreement or invasion of a right is established, since the law infers some damage to the injured party; where there is insufficient evidence presented to ascertain the particular amount of loss, the award of nominal damages is proper. Price v. Southern Home Ins. Co. of Carolinas, 100 Fla. 338, 129 So. 748 (1930). See 9A Fla.Jur., Damages §§ 7-8. Accordingly, we hereby affirm the order awarding nominal damages for the breach involved in the cause sub judice.
We have also considered the cross-appeal on the issue of liability filed by Cott Corporation, and find that no reversible error has been demonstrated.
Affirmed in all respects.
NOTES
[1] A corporation in the business of producing carbonated beverages and related functions.
[2] The complaint contained a count for specific performance as well as for compensatory damages. However, the former count was dismissed by the trial court upon the defendant's motion.
[3] See holding in Alderson v. Miami Beach Kennel Club, 336 So.2d 477 (Fla. 3d DCA 1976). Compare, Bluevack, Inc. v. Walter E. Heller & Co. of Florida, 331 So.2d 359 (Fla. 3d DCA 1976).
[4] The "other producer" is, in fact, a subsidiary corporation of the appellee corporation.
[5] Much of the documentation relied upon by this expert witness was never properly admitted into evidence.
[6] E.g., costs for establishment of outlets throughout the state  including personnel and sufficient storage accommodations.
[7] See New Amsterdam Casualty Co. v. Utility Battery Manufacturing Co., 122 Fla. 718, 166 So. 856 (1935); Autrey v. Carroll, 240 So.2d 474 (Fla. 1970); Aldon Industries, Inc. v. Don Myers & Associates, Inc., 517 F.2d 188 (5th Cir.1975).